UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION | MDL No. 05-1708 (DWF/AJB) |
| This Document Relates to:<br><br>Leopoldo Duron, Jr.,<br><br>    Plaintiff,<br><br>v.         Civil No. 06-25 (DWF/AJB)<br><br>Guidant Corporation, Guidant Sales Corporation, Boston Scientific Corp., and Cardiac Pacemakers, Inc.,<br><br>    Defendants. | **MEMORANDUM OPINION AND ORDER** |

This matter came before the Court on May 18, 2007, pursuant to a Motion for Application of Minnesota Law brought by Plaintiff Leopoldo Duron, Jr. For the reasons set forth below, the Court grants in part and denies in part Duron's motion.

**BACKGROUND**

In March 2002, Dr. Steven Higgins surgically implanted an implantable cardioverter defibrillator ("ICD"), the VENTAK PRIZM 2 DR, Model 1861 (the "Prizm 2"), in Leopoldo Duron, Jr. after an electrophysiology study showed that he needed an ICD. An ICD is a device that is implanted in a patient with certain ventricular

arrhythmias or with a risk of having such arrhythmias. It monitors a patient's heart rhythm and, if needed, acts to correct or restore that rhythm. An ICD can function both as a pacemaker and a defibrillator. Guidant[1] manufactured the Prizm 2.

On June 17, 2005, Guidant issued a notice to doctors explaining that the Prizm 2 was subject to a recall due to a short-circuiting problem. On June 29, 2005, the Food and Drug Administration classified Guidant's recall as a Class I recall, which is reserved for devices that create a reasonable probability of serious adverse health consequence or death. On August 19, 2005, Dr. Sardul Singh explanted Duron's Prizm 2 and replaced it with a different Guidant-manufactured ICD.

On October 14, 2005, Duron filed a complaint in the Southern District of California against Guidant related to the recall of the Prizm 2 and Duron's subsequent explant surgery. On January 11, 2006, the Judicial Panel on Multidistrict Litigation transferred Duron's case to this Court pursuant to 28 U.S.C. § 1407 for coordinated and consolidated pretrial proceedings. On October 12, 2006, Duron filed an Amended Complaint-by-Adoption, which specifically incorporated portions of the Master Complaint that was filed in the master case, MDL 05-1708 (DWF/AJB).

Early in this MDL, the Plaintiffs Lead Counsel Committee ("PLCC"), acting on behalf of the MDL plaintiffs, and Guidant agreed to try five bellwether cases.[2]

---

[1]   For the purposes of this motion, all defendants will collectively be referred to as "Guidant."

[2]   At the May 2, 2006 status conference, the PLCC and Guidant originally agreed to try six bellwether cases, including a death case. But at the December 20, 2006 status
(Footnote Continued on Next Page)

2

Eventually, *Duron v. Guidant Corp., et al.*, as a case involving an explant without complications, was chosen to be the first bellwether trial. In response to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998),[3] Duron consented to trial in this Court and waived his right to object to venue. *See* Manual for Complex Litig. Fourth § 20.132 at 224-25 (discussing various mechanisms that "permit the transferee court to resolve multidistrict litigation through trial while remaining faithful to *Lexecon* limitations"). The *Duron* trial is scheduled to begin on July 30, 2007. Duron now brings this Motion to determine which state's law applies to his claims.

## ARGUMENT

**I.     Which State's Choice of Law Rules Apply to Duron's Claims?**

A district court sitting in diversity normally applies the substantive law, including the choice-of-law rules, of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). If, however, there is a change of venue under

---

(Footnote Continued From Previous Page)
conference, they jointly agreed to remove a death case from the bellwether process. *See* PTO No. 26. The term "bellwether" is derived from the practice of belling a wether (a male sheep) selected to lead his flock. The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray. *See Ranchers Exploration & Dev. Co. v. Anaconda Co.,* 248 F. Supp. 708, 711 n.4 (D. Utah 1965).

[3]     *Lexecon* discussed the issue of whether a transferee court could assign to itself for trial purposes cases that had been transferred to it under 28 U.S.C. § 1407(a). The United States Supreme Court concluded that a federal district court conducting pretrial proceedings pursuant to the multidistrict litigation statute has no authority to invoke the change-of-venue statute to assign transferred cases to itself for trial and that, unless a plaintiff waives his or her right to challenge venue, a transferee court must remand a case to the transferor district after the pretrial proceedings are completed. *Lexecon*, 523 U.S. at 37-41.

28 U.S.C. § 1404(a), a federal court sitting in diversity is obliged to apply the law that would have been applied in the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). "In an MDL setting, the forum state is usually the state in which the action was initially filed before it was transferred to the court presiding over the MDL proceedings." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 140 (E.D. La. 2002).

Here, Duron filed his original Complaint in California; however, he contends Minnesota law, not California law, should apply to his claims. He argues that his case should be treated differently because he filed an Amended Complaint-by-Adoption in this Court, which incorporates by reference portions of the Master Complaint that was filed directly in this Court. This act, he contends, gives this Court original jurisdiction over his case, or in other words, turns his case into a direct-file case in the District of Minnesota. Duron also asserts that the parties agreed that Minnesota law would govern his claims when they jointly agreed to waive the *Lexecon* requirements and have the case tried in this Court. Duron bases this argument on cases discussing choice-of-law issues in nationwide class action contexts and on *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001). Finally, Duron argues that Guidant, with its headquarters in Minnesota insofar as it related to the manufacturing of ICDs (including the Prizm 2), has significant contacts with Minnesota that directly related to the allegations in this case.

Guidant responds that a transfer under 28 U.S.C. § 1407(a) should be treated as a simple change in venue, in which case the forum state remains the state where the action was commenced. It contends that *Lexecon* is irrelevant as to choice-of-law and that the

parties did not reach an agreement concerning choice-of-law. Guidant argues that California choice-of-law rules should apply to Duron's claims because he commenced this action in the Southern District of California. Guidant points out that the Master Complaint expressly states that it serves "only the administrative functions of efficiency and economy." (Master Compl. ¶ 2.) In addition, it contends that if the Court were to adopt Duron's argument, then any plaintiff whose case was transferred to this MDL could subvert *Klaxon* and *Van Dusen* by filing their own amended complaint-by-adoption.

The Court agrees with Guidant that California's choice-of-law rules should apply in this case. The parties did not reach an agreement on what impact, if any, the filing of a master complaint has on an MDL court's choice-of-law analysis. *See In re Vioxx Prods. Liab. Litig.,* 239 F.R.D. 450, 454 n.6 (E.D. La. 2006) (discussing the parties' agreement in *In re Bridgestone/Firestone*); *In re Propulsid,* 208 F.R.D. at 141-42 (discussing the purpose and problems created by the filing of a master complaint); *In re Bridgestone/Firestone*, 155 F. Supp. 2d at 1078 ("[T]he parties agree that this Court should be treated as the forum court because Plaintiffs filed their Master Complaint in this Court.") Admittedly, the interplay between the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, traditional venue statues, and choice-of-law rules is far from clear. As Judge Fallon has observed, "[p]erhaps the answer lies in a stipulation which addresses and clarifies these issues." *See In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 904 n.2 (E.D. La. 2007). Unfortunately, there is no such stipulation here.

The parties did not cite, and the Court could not find, any authority on point for the unusual and unique situation in this case. Namely, where the defendant is located in

the state where the MDL Court sits. Also, authority is lacking that discusses choice-of-law issues for a bellwether plaintiff whose case was transferred into an MDL where the plaintiff subsequently filed an amended complaint in the MDL court. Given this, the Court relies on the undisputed hornbook law discussed above. In addition, although § 1404 is not at play here, *Van Dusen's* reasoning is nonetheless instructive in that it teaches that "[a] change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen*, 376 U.S. at 639.

Normally, in a non-MDL setting, a transferor court's choice-of-law rules continue to apply even if the complaint is later amended in the transferee court. *See, e.g., Brown v. Hearst Corp.*, 54 F.3d 21, 24 (1st Cir. 1995) (utilizing transferor court's choice-of-law rules even though that claim-at-issue arose after the transfer by way of an amendment to the original complaint). The Court concludes that the same result should occur in this MDL. The transfer under § 1407, even after the filing of an amended complaint, is only a change in courtrooms. Consolidation of a master complaint is merely a procedural device designed to promote judicial economy, and, as such, it does not affect the rights of the parties in separate suits. *See In re Rezulin Prods. Liab. Litig.,* 390 F. Supp. 2d 319, 330 n.62 (S.D.N.Y. 2005). Just as transfers pursuant to §§ 1404 and 1407 do not affect the applicable choice-of-law rules, the Court concludes that the filing of a Master Complaint or an amended complaint-by-adoption or waiving *Lexecon* requirements do not impact the applicable choice-of-laws rules. Therefore, California's choice-of-law rules will govern *Duron*.

## II.     California's Choice of Law Analysis

California resolves conflict-of-law questions through a "governmental interest" analysis. *Reich v. Purcell*, 432 P.2d 727, 730 (Cal. 1967).  This approach requires a court to find the proper law to apply based upon the interests of the litigants and the involved states. *Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 724 (Cal. 1978).  "A separate choice-of-law inquiry must be made with respect to each issue in a case." *Application Group, Inc. v. Hunter Group, Inc.*, 72 Cal. Rptr. 2d 73, 82 (Cal. Ct. App. 1998).

Courts applying California's governmental interests analysis have established a three-part test:

> Under this amorphous and somewhat result-oriented approach, we must first consider whether the two states' laws actually differ; if so, we must examine each state's interest in applying its law to determine whether there is a "true conflict"; and if each state has a legitimate interest we must compare the impairment to each jurisdiction under the other's rule of law.

*Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994).  Thus, there is no conflict if the same outcome would be reached under the laws of each of the states involved. *Hurtado v. Superior Court*, 522 P.2d 666, 669 (Cal. 1974).  Likewise, if only one state has an interest in the application of its laws, there is no "true conflict," and the law of the interested state is applied. *Id*.  If at least two states have a legitimate interest, however, a court must determine to what extent each state's interest would be impaired if a particular jurisdiction's law were applied. *Id*.  In applying this rule, courts must consider the actual stake, as opposed to the hypothetical interest, that the potentially concerned states have in the litigation. *Camp v. Forwarders Transp., Inc.*, 537 F. Supp. 636, 638 (C.D. Cal. 1982).  A California court will conclude that a conflict is false and apply its own law,

7

unless the application of the foreign law will "significantly advance the interests of the foreign state." *Rosenthal v. Fonda*, 862 F.2d 1398, 1402 (9th Cir. 1988).

Duron asserts fourteen claims against Guidant in his Amended Complaint-by-Adoption, which the parties agree is the operative complaint in this case. Duron asserts that there is no conflict of law with respect to twelve of those claims. He asserts that California and Minnesota law conflict only with respect to Count V (Breach of Implied Warranty) and Count IX (the so-called "Senior Citizen" Claim). In contrast, Guidant asserts that there is no conflict with respect to eight counts only. According to Guidant, there is a true conflict between California and Minnesota law with respect to the following counts: Count I (Strict Liability Failure to Warn); Count IV (Negligence); Count V (Breach of Implied Warranty); Count VIII (Unfair and Deceptive Trade Practices Under California State Law); Count IX (Senior Citizen Claim); and Count X (Negligent Infliction of Emotional Distress).[4]

Because there is obviously no problem where the laws of California and Minnesota are identical, without further analysis, California law will apply to the eight claims that parties agree present no conflict. *See Hurtado*, 522 P.2d at 669. With respect

---

[4] Guidant also asserts that there is a conflict with respect to Count VI for Negligent Misrepresentation. Count VI, however, alleges a claim for fraud. Duron does not allege a claim for negligent misrepresentation. Under California law, the elements of negligent misrepresentation are similar to the elements of fraud, with the exception that there is no requirement of scienter or intent to defraud. *See Small v. Fritz Co.,* 65 P.3d 1255, 1258 (Cal. 2003). With respect to a claim for fraud, there is no conflict between California and Minnesota law, and as a result, California law will apply. *Compare* 5 B.E. Witkin, *Summary of California Law* § 772 (10th ed. 2006) *with In re Temporomadibular Joint Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1497 (8th Cir. 1997).

to the six remaining counts, the parties disagree whether there is a conflict and as to the impact of such conflict. The Court will consider each count in turn.

### A. Count I (Strict Liability Failure to Warn)

A review of Duron's arguments related to Count I show that he essentially concedes that, as applied to the facts of his claim only, there is no substantial difference between of California law and Minnesota law as to Count I. (Duron Mem. at 12-13.) The Court agrees. Given that, California law applies to Count I.

### B. Count IV (Negligence)

Both California and Minnesota law require proof of the same basic elements to support a claim for negligence: duty, breach, causation, and damages. *Compare Artiglio v. Corning, Inc.*, 957 P.2d 1313, 1318 (Cal. 1998) *with Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001). California, however, follows a pure comparative-negligence rule. *Li v. Yellow Cab Co.*, 532 P.2d 1226, 1243 (Cal. 1975). In contrast, Minnesota applies a modified comparative fault rule that diminishes a plaintiff's recovery in proportion to a plaintiff's negligence. Minn. Stat. § 604.01. Because application of Minnesota law in this instance will not significantly advance or impair Minnesota's interests, Count IV presents a false conflict, and California law will apply to it.

### C. Count V (Breach of Implied Warranty)

Both California and Minnesota have adopted the provisions of Article 2 of the Uniform Commercial Code, which embody the implied warranty of merchantability. *See* Cal. U.C.C. § 2314; Minn. Stat. § 336.2-314. But while California law generally requires

9

privity as a prerequisite of recovery, Minnesota law does not. *Compare Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954) *with SCM Corp. v. Deltak Corp.*, 702 F. Supp. 1428, 1432 (D. Minn. 1988).

With respect to Count V, both California and Minnesota have a legitimate interest in having their laws applied. In this rare instance where Minnesota is the location where the device at issue was manufactured, the Court concludes that Minnesota's laws would be more significantly impaired if its law was not applied. Given this, Minnesota law will apply to Count V.

### D. Count VIII (Unfair and Deceptive Trade Practices Under California State Law)

In his Amended Complaint-by-Adoption, Duron alleges Count VIII under California law. Nonetheless, he argues that this Court should somehow convert Count VIII to a claim under Minnesota law because he filed his Amended Complaint in Minnesota. Duron, as the Plaintiff, is the master of his Complaint, and he alleged Count VIII under California law. Accordingly, California law will apply to Count VIII. This conclusion, however, does not reach the issue of whether Minnesota law could or should apply had Duron, a California resident, alleged claims under Minnesota law.

### E. Count IX (Senior Citizen Claim)

Count IX is entitled "The Senior Citizen and Handicapped Person Consumer Fraud Act Minnesota Statute § 325F.71 And/Or Similar Statutes In Effect In Other Jurisdictions." Duron acknowledges that there is a conflict between California and Minnesota law concerning his senior citizen claim. Namely, Minnesota allows recovery

10

of damages up to $10,000 for each violation directed at individuals 62 years of age and older, and California imposes damages up to $5,000 for each violation directed at individuals 65 years of age and older.  *Compare* Cal. Civ. Code § 1780(b)(1) *with* Minn. Stat. § 325F.71.  Because Duron was older than 65 when his Prizm 2 was implanted, the difference in age is irrelevant.

Under either state's law, a Senior Citizen Claim simply provide for a supplemental civil penalty *if a defendant is found to have violated that state's consumer protection statutes*.  *See* Cal. Civ. Code § 1780(a) (explaining that a person can bring a claim under California's "Senior Citizen Act" if he or she has suffered damages as a result of a violation of California's consumer protection statutes, specifically § 1770); Minn. Stat. § 325F.71, subd. 2 (describing the supplemental civil penalty to be imposed for a violation of the consumer protection statutes, specifically Minn. Stat. §§ 325D.43 through 325D.48).  Therefore, given that the Court has concluded that California law applies to Count VIII, it follows that California law must apply to Count IX because Count IX's application depends on a finding of a violation as to Count VIII.

### F.    Count X (Negligent Infliction of Emotional Distress)

There are two main differences between California and Minnesota law with respect to a claim for negligent infliction of emotional distress ("NIED").  First, California law does not require proof of a physical manifestation, whereas Minnesota does.  *Compare Burgess v. Superior Court*, 2 Cal. 4th 1064, 1079 (Cal. 1992) with *Engler*, 706 N.W.2d 764, 765 (Minn. 2005).  Second, under California law, a claim for NIED is not an independent tort, whereas under Minnesota law it can be.  *Compare*

*Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 807 (Cal. 1993) *with K.A.C. v. Benson*, 527 N.W.2d 553, 557 (Minn. 1995).

With respect to Duron's claim for NIED, both California and Minnesota have a legitimate interest having their laws applied. In this rare instance where Guidant is located in Minnesota, the Court concludes that Minnesota's laws would be more significantly impaired if its law were not applied. Given this, Minnesota law applies to Count X.

## CONCLUSION

The analysis contained in this Order will be applicable to the other scheduled bellwether trials.[5] *Clasby v. Guidant Corporation* (Civ. No. 05-2596 (DWF/AJB)) was commenced in June 2005, in the Southern District of Florida and transferred to this Court by the Judicial Panel on Multidistrict of Litigation in November 2005. *Valls v. Guidant Corporatio*n (Civ. No. 06-53 (DWF/AJB)) was commenced in July 2005, in the Western District of Louisiana and transferred to this Court by the Judicial Panel on Multidistrict Litigation in January 2006. Valls filed an Amended Complaint-by-Adoption in May 2007. For the reasons stated above, Florida's conflict-of-law rules will govern *Clasby*, and Louisiana's conflict-of-law rules will govern *Valls*.

---

[5] These conclusions are based on the limited information available to the Court through the documents that have been docketed in the individual cases. The Court recognizes that additional facts may arise that impact its analysis. These conclusions are also based on the very unique fact that Guidant is located in the state where this MDL Court sits and the fact that the device at issue was manufactured in Minnesota.

*Braund v. Guidant Corporation* (Civ. No. 05-2035 (DWF/AJB)) was commenced in Ramsey County District Count in August 2005, and Guidant removed it to this Court that same month under 28 U.S.C. § 1442.[6]  Braund filed an Amended Complaint-by-Adoption in December 2006.  *Beranek v. Guidant Corporation* (Civ. No. 06-272 (DWF/AJB)) was directly filed in this Court in January 2006, and Beranek filed an amended complaint-by-adoption in December 2006.  The plaintiffs in *Braund* and *Beranek* are not Minnesota residents.  In both cases, Minnesota will act as the forum state, and its conflict-of-laws analysis will govern both *Braund* and *Beranek*.  *See In re Vioxx,* 478 F. Supp. 2d at 903-04 (discussing choice-of-law analysis for cases filed directly in an MDL by non-residents).

---

[6]  It appears that the Court's jurisdiction in *Braund* could be based on diversity under 28 U.S.C. § 1332.  If complete diversity does not exist, the Court's jurisdiction needs to be immediately examined.  At this very late date, the fact that the Court's jurisdiction may be lacking is indeed troubling, especially given the fact that Braund's Motion to Remand was withdrawn in September 2006, after the Court issued its April 26, 2006 Memorandum Opinion and Order explaining its remand decisions in *Wislocki* and *Machalowski*.  The parties should be prepared to discuss this jurisdictional issue (including how *Braund* was selected as a bellwether case and what other cases might be in this same procedural posture) at the June 8, 2007 hearing.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff Leopoldo Duron, Jr.'s Motion for Application of Minnesota Law to the Claims (Civ. No. 06-25 (DWF/AJB), Doc. No. 6; MDL No. 05-1708 (DWF/AJB), Doc. No. 1422) is **GRANTED IN PART** and **DENIED IN PART**.

Dated:  May 22, 2007　　　　　　　　　　s/Donovan W. Frank
　　　　　　　　　　　　　　　　　　　　DONOVAN W. FRANK
　　　　　　　　　　　　　　　　　　　　Judge of United States District Court